UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re:** | ) |
| | ) Chapter 7 |
| Michael S. Hall, | ) |
| Debtor. | ) No. 09 B 49463 |
| | ) |
| David P. Leibowitz, | ) |
| Plaintiff, | ) No. 10 A 02693 |
| v. | ) |
| | ) |
| James A. Hall. | ) |
| Defendant. | ) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Debtor Michael S. Hall filed his petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor co-owns with his brother, James Hall, farm land located in Garber, Iowa. David P. Leibowitz, the Chapter 7 Trustee for Debtor's estate, filed the above-captioned adversary proceeding to sell the Defendant's interest in the farm pursuant to 11 U.S.C. § 363(b) and (h). The matter was set for trial. Defendant's Exhibits 1 through 13, 15, and 16 were admitted into evidence. Trustee's Exhibits 3 and 6 through 16 were admitted into evidence without objection. Trustee's Exhibit 1 was admitted over objection for the limited purpose of showing the marketability of the property at issue at auction versus through private sale. Trustee's Exhibit 2 was admitted over objection on limited grounds to show the trend toward growth in value of Iowa cropland generally. Stipulations of Fact were entered into by the parties and admitted into evidence.

Both sides rested after presentation of evidence and argument. Based thereon, the following Findings of Fact and Conclusions of Law are made and entered. Pursuant thereto the Trustee's request to sell the bankruptcy estate's interest and the interest of co-owner, Michael A. Hall, in real property commonly known as 34362 Iowa Ave., Garber, IA pursuant to 11 U.S.C. § 363(b) and (h) will be denied and entry of any judgment will be denied. The Adversary proceeding will instead be dismissed since no case or controversy under the Constitution has been presented in absence of any offer by anyone to purchase the subject property.

1

## FINDINGS OF FACT

1. Michael S. Hall ("Debtor") filed his original voluntary petition under Chapter 7 of the Bankruptcy Code on December 31, 2009. (09 B 49463, Dkt. 1) David P. Leibowitz ("Trustee") was appointed as the Chapter 7 Trustee for this estate and because no trustee was elected at the first meeting of creditors held pursuant to 11 U.S.C. § 341, he continues to serve in that capacity in accordance with 11 U.S.C. § 702(d).

2. James Hall ("Defendant") is Debtor's brother and resides in Palatine, Illinois.

3. Prior to the petition date, the Debtor and Defendant each own an undivided 50% interest of farmland in Garber, Iowa ("Iowa Property"), consisting of approximately 115 acres. Debtor and Defendant own the Iowa Property as tenants in common. That property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

4. Debtor and Defendant purchased the farm in 2003 from other family members following the death of their uncle. The combined tax basis in the Iowa Property of James and Michael Hall is $178,200.00 (Tr. 126)

5. The parties stipulated that at least 17 acres of the Iowa Property is tillable hill ground. (Jt. Stip. ¶ 16) They also agreed that at least 64 acres of the Iowa Property are tillable bottom ground. (*Id.* at ¶ 17)

6. Community Savings Bank ("Bank") holds two mortgages on the Iowa Property and has its principal office in Edgewood, Iowa.

7. Bank intervened in the Adversary proceeding but has since ceased participation in this proceeding after reaching agreement with the Trustee . (10 A 02693, Dkt. 6, Answer to Complaint by Community Savings Bank ¶ 10)

8. On July 14, 2003, Defendant and Debtor borrowed $135,000.00 from the Bank (the "First Mortgage Loan"). Proceeds of that loan were used to buy the Iowa Property. Defendant and Debtor executed and delivered to Bank a note in the principal amount of $135,000.00 ("First Mortgage Note"). (Def. Ex. 2) The First Mortgage Note was secured by a first mortgage on the Iowa Property that Debtor and Defendant granted to Bank on July 14, 2003. The lien on the Iowa Property granted to the Bank by the First Mortgage as attached, is perfected, and remains in effect as the senior encumbrance against the Iowa Property.

9. On February 7, 2012, Defendant and Debtor were personally indebted to the Bank on the First Mortgage Loan in the amount of $95,618.56 (comprising principal and interest). (Jt. Ex. 4) Interest continues to accrue on the principal balance of the First Mortgage Loan at the rate of $13.34 per day from and after February 8, 2012. (*Id.*) The foregoing balance does not include legal fees and expenses incurred by Bank with respect to the First Mortgage Loan as of February 7, 2012, or any future fees and expenses that Bank may incur prior to the conclusion of this litigation and repayment of the First Mortgage.

10. On March 25, 2008, Debtor borrowed $125,000.00 from Bank (the "Second Mortgage Loan"). At this time, Debtor and Defendant each owned an undivided half interest in the Iowa Property. Debtor and Defendant granted a second mortgage note to secure that loan. Defendant signed and delivered to Bank a hypothecation agreement to secure the Second Mortgage Loan.

11. Bank was not willing to make the Second Mortgage Loan unless Defendant signed both the Second Mortgage and Hypothecation Agreement. (Def.'s Ex. 16) ("Community Savings Bank, in granting credit to Michael S. Hall, requires the pledge of the undivided ½ interest of real estate described herein by James A. Hall . . . .").

12. The lien on the Iowa Property granted to Bank by the Second Mortgage has attached, is perfected, and remains in effect as an encumbrance against the Iowa Property junior to the lien of the First Mortgage, but senior to all other encumbrances against the Iowa Property.

13. On February 7, 2012, Debtor was personally indebted to Bank on the Second Mortgage in the amount of $130,991.58 inclusive of principal and interest. (Jt. Ex. 7) Interest continues to accrue on the principal balance of the Second Mortgage Loan at the rate of $21.27 per day from and after February 8, 2012. The foregoing balance does not include legal expenses and fees incurred by professionals and para-professionals employed by Bank with respect to the Second Mortgage Note not applied as of February 7, 2012, or such future fees and expenses that Bank may incur prior to the conclusion of this litigation and the repayment of the Second Mortgage Note.

14. Apart from the First and Second Mortgages, and accrued but unpaid real estate taxes, there are no other encumbrances against the Iowa Property.

15. Neither the Debtor, the Trustee, nor Defendant have contested the validity, priority, or extent of the Bank's claims against the Debtor or Defendant by reason of their promissory note on the First Mortgage Loan, against Debtor by reason of his Second Mortgage Note, or against Debtor, Defendant, or the Estate by reason of Bank's secured mortgage liens in and to the Iowa Property that arise from the First and Second Mortgage.

16. Defendant has no personal liability for the Second Mortgage Loan. However, his undivided half interest as a tenant in common of the Iowa Property was pledged by Defendant to the Bank to secure the Second Mortgage Note by virtue of the Second Mortgage and the "Real Estate Hypothecation Agreement." (Def.'s Ex. 5, 6, and 16)

17. On October 19, 2011, the Trustee filed a Motion to Employ Hertz Farm Management Inc. and Hertz Real Estate Services as professionals to assist the Debtor's estate in the sale and liquidation of the Iowa Property. (09 B 49463, Dkt. 22)

18. The parties stipulated that partition in kind of the Iowa Property among the Estate and Defendant is impractical. (Jt. Stip. ¶ 40)

19. In the event of any sale of the Iowa Property, the proceeds of the sale would first be applied to satisfaction of the First Mortgage Loan in the amount of $95,618.56 plus interest and expenses accruing after February 8, 2012.

20. Thereafter, the proceeds of any sale would be applied to the satisfaction of the Second Mortgage Loan in the amount of $130,991.58 plus interest and expenses accruing after February 8, 2012.

21. Defendant is not a farmer and has been a resident of Illinois for the past thirty years (T. James Hall, Tr. 93–94)

22. Defendant owns a janitorial business and works as a part-time janitor in Elgin and earns between $35,000 and $45,000 per year. (T. James Hall, Tr. 94) Defendant has not received any income from the Iowa Property. He visits the Iowa Property three to four times a month. (*Id.* at 127)

23. Defendant did not invest any of his own money in the Iowa Property. (T. James Hall, Tr. 104–05)

24. As of the date of trial the Iowa Property has not been marketed, no sale of it is in prospect and no offer to purchase has been presented.

## Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). Venue lies properly under 28 U.S.C. § 1408.

## Discussion

The Trustee seeks to sell co-owner Michael A. Hall's interest in the Iowa Property pursuant to 11 U.S.C. § 363(h). Under that provision:

> (h) . . . the trustee may sell both the estate's interest, under subsection (b) or (c) of this subsection, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common . . . only if –
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> >
> > (4) such property is not used in the production, transmission, or distribution, for sale of electric energy or of natural or synthetic gas for heat, light, or power.

A proceeding "to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property" must be brought in an adversary proceeding. Fed. R. Bankr. P. 7001(3). The Trustee bears the initial burden of proving each of the statutory requirements of 11 U.S.C. § 363(h). *Berland v. Gauthreaux (In re Gauthreaux)*, 206 B.R. 502, 505 (Bankr. N.D. Ill. 1997). Once the Trustee has established a prima facie demonstrating that the estate would benefit from the sale of the property in question the burden shifts to the co-owner to establish why the property should not be sold. *Brown v. Phillips (In re Phillips)*, 379 B.R. 765, 795 (Bankr. N.D. Ill. 2007).

In his Answer to the Complaint, Defendant conceded that any sale would satisfy the conditions found in subsections (1), (2), and (4) of § 363(h). (Ans. ¶¶ 23, 24, and 26) The only issue remaining is whether the benefit, if any, to the estate from any sale of the Iowa Property

5

would outweigh the detriment, if any, to Defendant. "Detriment" has been defined as economic hardship in addition to any loss, harm, injury, or prejudice created as a result of the involuntary sale. *Brown*, 379 B.R. at 798. The Trustee would meet his burden by establishing that estate's share of the net proceeds would exceed existing liens on the debtor's interest in the property. Benefit to the estate is determined by the value of the estate's interest in the Iowa Property as of the date of the bankruptcy filing. In determining whether the benefit to the estate outweighs the detriment to the co-owner courts must consider any economic or emotional harm faced by the co-owner. *Id.* It has been held that "[p]ayment of a significant dividend to creditors from the sale of the property is a substantial benefit to the estate." *Id.* (citing *Gauthreaux*, 206 B.R. at 506). However, it has been said that there is no requirement that the benefit exceed the detriment significantly. *Stern v. Molano (In re Devanzo)*, 2010 Bankr. LEXIS 1557, at * 12 (Bankr. E.D.N.Y. May 3, 2010).

*Benefit to the Estate*

According to the Trustee, any sale would result in satisfaction of all secured debts, all administrative claims, and a substantial amount of the claims of unsecured creditors. (Pl.'s Final Argument, at 7) Aside from sums owed the Bank, Debtor owes approximately $45,000 to unsecured creditors. (Tr. 67) Defendant disagrees that there will be any benefit to the estate. He argues there is no reasonable basis on which it can be inferred that the Iowa Property can be sold for a price that would satisfy the Bank's liens and claims against that property, and leave any kind of surplus that could fund a dividend to the unsecured creditors of the Debtor's estate.

Unfortunately, the possibility of benefit to the estate cannot be determined here because there is not yet any offer to purchase the Iowa Property. In addition, the Trustee has not established a minimum sales price. Instead, he offered his own opinion on and also asked the Court to establish the range at which the Iowa Property could be sold. (Tr. 50–52) Based on a marketing analysis from Hertz, his own experience as a Trustee responsible for land sales throughout the United States, and the status of the Iowa farmland market generally, the Trustee estimates that the Iowa Property can be sold for between $450,000 and $516,000 (roughly $5,000 per acre). (Pl.'s Ex. 1) But only an actual offer after proper marketing will establish value of the Iowa Property.

At trial, the parties agreed on establishing a minimum sales price of $425,000. (Tr. 26) The Trustee stated he would not sell the property if the costs would exceed any return for the

estate. (Tr. 7) Even at $425,000, the Defendant maintains that even a sale at that price will not meet the requirements of § 363(h) because his right to receive a substantial portion of the sale proceeds under his right to subrogation (discussed below) will leave little, if anything, for Debtor's other creditors depending on what price the Iowa Property is sold for.

*Detriment to the Defendant*

Defendant does not clearly identify and has not proven what, if any, detriment he will suffer if the Iowa Property is sold. Confusingly, he on one occasion admits to being neither financially or emotionally "dependant" on the Iowa Property. (Def.'s Trial Brief, at 2) However, in another statement, he argues the sale of the property will "needlessly inflict financial and emotional loss." (Def.'s Am. Proposed Findings of Fact and Conclusions of Law ¶ 17) He does disagree with possible terms of the sale and in particular argues about the price at which it might be sold. He seeks input into the disposition of the proceeds. He also argues that, depending on the price at which the property is sold, he may be saddled with a large tax bill on capital gains resulting from the sale of the Iowa Property, but no showing on that point has shown in detail as to what taxes may become due.

Defendant's central argument is that the Trustee cannot show that there will be a benefit to the Estate upon sale of the Iowa Property because there will little if any money left from the sale to give to creditors other than the Bank. He argues this is the result of, among other things, his statutory right to subrogation to the rights of the Bank under 11 U.S.C. § 509. As part of his prima facie case, the Trustee must show that the benefit to the estate outweighs any detriment to the Defendant. The Defendant argues that it is possible that the estate will realize *no* benefit from the sale of the property if amounts asserted to be owed to Defendant by the Estate is factored in. The issue here is whether the Trustee can successfully establish a prima facie case that the property should be sold. To determine this, however, if there were a purchase offer it must be first be ascertained whether and to what extent the Defendant may be subrogated to the rights of the Bank if the Iowa Property is sold.

*Subrogation Issues*

Broadly defined, subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. *Rinn v. First Union Nat'l Bank of Maryland*, 176 B.R. 401, 407 (D. Md. 1995). Section 509 permits a co-obligor who pays, after the petition date, a claim for which the debtor is primarily liable, to be subrogated to the rights of the creditor that the co-

obligor has paid. Without the existence of this provision, a co-obligor who paid a claim post-petition would have any claim for contribution, reimbursement, or subrogation discharged. *Collier* ¶ 509.01. Section 509 provides limited protection for co-obligors by ensuring that a co-obligor is entitled to whatever distribution that would have otherwise gone to the creditor whose claim was paid by the co-obligor post-petition. *Id.* The rationale for this provision is rooted in fairness, "leaving the estate in the same position as if it had paid the claim itself. Without section 509, other creditors would reap a windfall at the expense of the paying co-obligor." A Supreme Court Opinion held that "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against the other." *Am. Surety Co. v. Bethlehem Nat'l Bank*, 314 U.S. 314, 317 (1941).

Defendant argues that application of Section 509 minimizes or eliminates any benefit to be received by the estate from a possible sale of the Iowa property. He identifies two ways in which § 509 applies to him. First, if proceeds of the sale are used to pay off the mortgage then he will become subrogated to the rights of the Bank. Second, he has suggested that he has already made post-petition debt service payments to the Bank and that he has paid to repair flood damage to the Iowa Property. (Def.'s Proposed Findings and Conclusions ¶ 17) He did not, however, provide evidence of any such payments so those statements must be disregarded. He also has not sought to have those payments treated as administrative expenses.

Section 509 reads:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
(b) Such entity is not subrogated to the rights of such creditor to the extent that –
   (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is –
      (A) allowed under section 502 of this title;
      (B) disallowed other than under section 502(e) of this title; or
      (C) subordinated under section 510 of this title; or
   (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.
   (3) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement of contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

As stated above, the Trustee has stipulated and agreed that as a condition of any sale of the Iowa Property all sums due to the Bank will be paid in full from proceeds of that sale. (Stip. ¶ 35) Pursuant to that agreement with the Bank, if the Iowa Property is sold, at least $224,929.00 of the sale proceeds must therefore be paid to Bank to satisfy the First and Second Mortgage. Hall Exhibit 14 projects that if the Iowa Property is sold for $400,000, the net proceeds that the bankruptcy Estate will receive (after payment of closing costs and other costs) would be no greater than $7,556.50. According to Hall Exhibit 15, a sale at $450,000 would net $31,316.50. Each calculation assumes a brokerage fee of 5% and taxes, title, and closing costs of $10,000 not disputed by the Trustee. The Defendant's calculations are as follows:

|  | Sale at $400,000 | Sale at $450,000 |
|---|---|---|
| Gross Proceeds | $400,000 | $450,000 |
| Less brokerage fee of 5% | (20,000) | (22,500) |
| Less taxes, title, closing costs | (10,000) | (10,000) |
| **Net Sale Proceeds** | **370,000** | **417,500** |
| Payoff first mortgage | (94,991) | (94,991) |
| Payoff second mortgage | (129,938) | (129,938) |
| **Net proceeds** | **145,071** | **192,571** |
| Less sum due to Defendant for contribution | (129,938) | (129,938) |
| Balance for 50/50 distribution | 15,133 | 62,633 |
| Less Defendant's distribution | (7,556.50) | (31,316.50) |
| **Estate's share of proceeds** | **7,556.50** | **31,316.50** |

A sale at $425,000 would net the Estate $20,066.50. With $45,000 owed to unsecured creditors, in addition to payment of administrative expenses due such as the Trustee's fees, the Defendant argues that any of these sums are too small to provide material benefit to the Estate or Debtor's creditors other than the Bank.

The Trustee disagrees with several of Defendant's assertions. In his post-trial brief, the Trustee argues that the Defendant's subrogation rights are not ripe because Defendant has not yet paid anything to satisfy the Bank's debt secured by the Second Mortgage. However, at trial, the Trustee argued that the Defendant's subrogation rights, if any, must be determined here in order to decide whether benefit to the estate from sale of the Iowa Property would outweigh the

9

detriment to Defendant. (Tr. 15) In his post-trial materials, however, the Trustee contends that he seeks only authority to sell the Iowa Property. As no such action has yet been approved, he argues, no case or controversy exists with respect to the Defendant's subrogation rights. Further, he states without elaboration that while it is "conceivable" that the Second Mortgage will be paid from proceeds of the sale that it may not "practically" be the case. (Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 81) Accordingly, he argues that it is premature to decide Defendant's subrogation rights.

Under the U.S. Constitution, Article III's limitations on the authority of federal courts to decide "cases and controversies" applies in bankruptcy. U.S. Const. art. III, § 2, cl. 1; *Kilen v. U.S. (In re Kilen)*, 129 B.R. 538, 543 (Bankr. N.D. Ill. 1991).

Inquiries into ripeness of issues to be decided generally address two factors: first, whether the relevant issue is fit for review and sufficiently definite so as to permit judicial resolution without further factual development; and, second, whether the parties would suffer any hardship by postponement of the judicial action. *Pacific Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 201 (1983). Only the first prong of that test has even been asserted here. Fitness for judicial review depends on whether the claim at issue involves uncertain or contingent events that may or may not occur. *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990).

Defendant's subrogation claim involves events that are contingent and not certain to occur. The Trustee argues that the issue of subrogation is not ripe because the Iowa Property has not been sold nor has the Bank's Second Mortgage been satisfied. He admits that when the Iowa Property is sold that the Second Mortgage will be satisfied out of the proceeds of that sale. If and when the sale occurs, therefore, the Defendant's rights to subrogation will potentially arise. But the real contingency here is whether the sale of the Iowa Property will or will not be sold at a high enough price to meet the Trustee's burden. If it is sold, however, it must be sold for a price that satisfies the Bank's Second Mortgage.

The facts in this case are similar to those in a case decided by the District Court for the District of Maine. In *Metayer, et al. v. PFL Life Ins. Co., et al.*, 30 F. Supp. 2d 57 (1998), an action in federal court was brought by an insured against his insurer for medical bills incurred by him. *Id.* at 57. The insured also commenced an action in state court for medical malpractice against a health care provider. *Id.* The insured conceded that future recovery from the state court

10

action could be based in part on the same medical bills as to which the insured sought payment from the insurer in the federal court case. *Id.* The insurer sought a declaratory judgment that it would be entitled to subrogation with respect to medical bills recovered by the insured in the event the he was successful in his action against the health care provider. *Id.* The insured contended that the issue was not ripe. The Opinion concluded that whether a party has a right to subrogation, should events take place solidifying that right, could be resolved in a declaratory judgment action. *Id.* at 59. It reasoned that once the insurer was held legally liable for payments on the insured's behalf that the insurer had a sufficient interest in recovery against third parties to create an actual controversy. *Id.* In this case, there is no dispute that Defendant is liable on both the First and Second Mortgage Loans. He therefore has a sufficient interest in recovery from the Trustee to the extent he may be subrogated to the rights of the Bank.

Defendant's claim for subrogation is arguably not ripe for decision as it cannot be known what will be offered to purchase the Iowa Property and whether and to what extent the Second Mortgage Loan will be paid. On the other hand, the Trustee has agreed that any sale of the property must be large enough to satisfy the First and Second Mortgage Loans. Therefore, *if* the Iowa Property to be sold at all it must be sold at a price that satisfies both the First and Second Mortgages. While Defendant's subrogation rights cannot be finally determined yet, any potential rights do bear on the amount of benefit to be received by the estate upon closing of any sale of the Iowa Property. Therefore, a discussion on those potential rights would assist the parties in determining a sales price.

The Trustee alternatively maintains the Defendant would not be subrogated to the rights of Bank upon payment of the Second Mortgage from sale proceeds because requirements under 11 U.S.C. § 509(a) are not met. There is some disagreement as to what is required to subrogate a claim under § 509. The issue is whether subrogation is governed exclusively by the requirements of § 509 of the Bankruptcy Code, or whether the creditor seeking subrogation under § 509 must also satisfy a state common law right commonly referred to as "equitable subrogation." The distinction will be critical in this case if an offer to purchase is even received. Under the Bankruptcy Code, a co-debtor is subrogated to the rights of a creditor if it: (1) is liable with the debtor on or has secured; (2) a claim of a creditor against the debtor; and (3) pays such claim. In contrast, under Iowa state law, equitable subrogation is appropriate where: (1) payment was made to protect the subrogee's own interest; (2) repayment by the subrogee was not voluntary;

11

(3) the debt paid was one for which the subrogee was not primarily liable; (4) the entire debt was paid; and (5) subrogation will not injure the rights of others. *Klotz v. Klotz*, 44 N.W. 2d 142, 156 (Iowa Ct. App. 1989). The state law requirements for equitable subrogation are therefore more exacting and their application here would possibly defeat Defendant's theory as he will not have paid the entire debt to the Bank. The Defendant argues that his situation warrants subrogation under either theory.

According to the Trustee, the requirements for equitable subrogation must be met before subrogation is available in bankruptcy cases even where a party seeks subrogation pursuant to § 509(a). He cites one Opinion by the undersigned bankruptcy judge wherein both standards were applied to determine whether a guarantor was subrogated to the rights of a creditor paid with funds from the guarantor's savings account. *In re The Medicine Shoppe*, 210 B.R. 310, 311–315 (Bankr. N.D. Ill. 1997). That Opinion recognized that "the doctrine of equitable subrogation [was] codified in § 509 . . . ." *Id.* at 313. However, it was also noted that "[w]hile subrogation under § 509(a) is similar to the doctrine of equitable subrogation, it is not identical." *Id.* Courts apply a more stringent test to determine whether equitable subrogation applies. *Medicine Shoppe* pointed to a split among courts as to whether that more stringent test must be satisfied to allow subrogation. *Id.* at 313–14. In that case it was decided that the guarantor was subrogated to the rights of the creditor-bank under either test but the Opinion did not hold that the state law requirements for equitable subrogation must be met to satisfy § 509. *See id.* at 314.

In *Hamada v. Far E. Nat'l Bank (In re Hamada)*, 291 F.3d 645 (9th Cir. 2002) one 9th Circuit Opinion distinguished various recognized forms of subrogation: contractual subrogation, equitable subrogation, and statutory subrogation. *Id.* at 649. Contractual subrogation, as its name implies, arises from an express or implied agreement between the subrogor and subrogee. *Id.* (citing *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001). "Equitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable for the extinguished obligation." *Id.* (quoting *Polec v. Northwest Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 549 (6th Cir. 1996). Statutory subrogation is a right created by statute. *Id.* (citing *Carter v. Derwinski*, 987 F.2d 611, 614 (9th Cir. 1993).

There is no clear precedent in the Seventh Circuit indicating whether the requirements of equitable subrogation under state law apply when a claimant invokes its right to subrogation

under § 509. In *In re Bugo*, 760 F.2d 731 (7th Cir. 1985), a Panel of the Seventh Circuit considered a claimant's right to subrogation under the statute. Although it applied the facts of the case only to the statutory language, the Opinion also explained its view of subrogation in bankruptcy by stating:

> Certain entities may be liable to a creditor along with the debtor . . . . A person who gives the creditor collateral for the obligation the debtor has a liability for may . . . be in a position of having to satisfy the creditor. Bankruptcy law does not create such liabilities nor does it create the right of such person to reimbursement from the debtor. They are a matter of non-bankruptcy law. The bankruptcy law provides a general rule that to the extent that such person or entity satisfies the creditor he or she becomes subrogated to the right the creditor has against the debtor.

*Id.* at 734 (citing D. Cowans, *Bankruptcy Law and Practice* § 12.29 (1983 Interim Ed.) This passage, also cited in *Medicine Shoppe*, is taken by the Trustee to mean that the elements of equitable subrogation under state law must be met before subrogation is available under § 509 of the Bankruptcy Code. However, neither *Bugos* nor *Medcine Shoppe* held that requirements beyond those stated in the statute must be met. Where, as here, there is no ambiguity as to the statute, it must be applied according to its plain terms.

In this case, Defendant's interest fits within the parameters of § 509. He is liable with the Debtor on the debt owed the Bank. In the event of a sale under § 363(h) he will have paid the claim of Bank against the Debtor with proceeds of the sale. There is Circuit authority that "payment" required by § 509(a) can flow from both a voluntary payment by the non-debtor co-owner or by an involuntary taking of the co-owned property through a foreclosure. *See, e.g., Grantham v. Cory (In re Flamingo 55, Inc.)*, 646 F.3d 1253, 155 (9th Cir. 2011).

The Trustee disputes the Defendant's assertion that he would be entitled to recoup from the Estate the full amount paid for the Second Mortgage. Rather, he argues, the Defendant is entitled to *at most* half of that amount because in the event of the sale of the Iowa Property by the Trustee, half of the Second Mortgage Loan will have been paid from the proceeds of sale of Defendant's half interest in the Iowa Property. Defendant's theory is that upon the sale of the Iowa Property, and the payment of the Second Mortgage Loan of approximately $131,000 to the Bank, that he would step into the shoes of the Bank as a secured second mortgage lender under the doctrine of subrogation and thus be entitled to receive, for himself, $131,000 from the net proceeds of the sale before other creditors would be paid. Under this theory, the Estate would not benefit sufficiently from a sale of the Iowa Property to justify selling it.

13

Defendant apparently believes he would be entitled to the entire amount paid towards the Second Mortgage Loan as a right of contribution. Contribution is available to a party that has paid more than his /her share of a joint indebtedness. *In re Cooper*, 83 B.R. 544, 547 (C.D. Ill. 1988) (citing cases). A contribution claim may be allowed in Bankruptcy under 11 U.S.C. § 502(e). Defendant, however, seeks subrogation under 11 U.S.C. § 509(a). The text of the statute makes clear that Defendant may not pursue rights under both provisions. He evidently recognizes this fact as he stipulated to the fact that he has *not* filed a claim under § 502. (Stip. ¶ 49)

The Trustee argues that Defendant's theory of full recovery of the amount paid on the Second Mortgage Loan is not well-founded. He contends that Defendant seeks to ignore his voluntary hypothecation of his interest in the Iowa Property to secure the Second Mortgage Loan with Bank. Defendant emphasizes that he is not *personally* liable on the Second Mortgage as he did not sign the promissory note associated with that Loan. Rather, he is liable *in rem* only to the extent of his half interest in the Iowa Property. Hypothecation is a contractual right of a creditor to cause the hypothecated subject matter to be sold and the proceeds applied to its claim. *In re Vermont Toy Works, Inc.*, 82 B.R. 258 (Bankr. D. Vt. 1987). By reason of the Hypothecation Agreement and Second Mortgage executed by Defendant with respect to his interest in the Iowa Property, payment on account of the Second Mortgage Loan in the event of the sale of the Iowa Property will be half from the Estate's interest in the Iowa Property and half from the Defendant's interest in the property. Defendant's execution of the Hypothecation Agreement and Second Mortgage render him jointly and severally liable with Debtor (to the extent of his half-interest) for any liabilities incurred in connection with the Second Mortgage and Second Mortgage Note. Defendant cites no authority in support of his assertion that he is entitled to recover the *entire* amount paid on the Second Mortgage Loan. Section 509 specifies that he will be subrogated to the rights of the Bank *to the extent of such payment* made out of the proceeds of the sale to which he is entitled. His half-interest in the Iowa Property does entitle him to half of the proceeds of the sale of the Iowa Property. His calculations should therefore be adjusted as follows:

|  | **Sale at $400,000** | **Sale at $450,000** |
|---|---|---|
| Gross Proceeds | $400,000 | $450,000 |
| Less brokerage fee of 5% | (20,000) | (22,500) |
| Less taxes, title, closing costs | (10,000) | (10,000) |

| | | |
|---|---:|---:|
| Net Sale Proceeds | **370,000** | **417,500** |
| Payoff first mortgage | (94,991) | (94,991) |
| Payoff second mortgage | (129,938) | (129,938) |
| Net proceeds | **145,071** | **192,571** |
| Less sum due to Defendant for contribution | (64,969) | (64,969) |
| Balance for 50/50 distribution | 80,102 | 137,601 |
| Less Defendant's distribution | (40,051) | (68,800.50) |
| Estate's share of proceeds | **40,051** | **68,800.50** |

A sale at $425,000 would leave the Estate with $52,551. These figures change the outlook. A sale at $425,000 would ensure payoff of the Bank, unsecured creditors, and leave some balance to pay administrative claims.

Unfortunately, none of this is conclusive. The Trustee has not even begun marketing the property so no offer to purchase is on the table to consider. Without such an offer, the case does not present a "case or controversy" under the U.S. Constitution. U.S. Const., art. III, § 2, cl. 1. Any judgment as to the relative benefit to the Estate would be advisory. As such, the issue is not ripe for adjudication as it is premature to adjudge what, if any, benefit to the Estate there will be until there is an offer that can be analyzed under the foregoing standards and calculations. The Trustee's Adversary must therefore be dismissed without prejudice to re-file once an offer has been received.

ENTER

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of June, 2012.